IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 8:06-136-JFA |
| ) | |
| v. ) | MEMORANDUM |
| ) | OPINION & ORDER |
| LENNELL DYCHES ) | |
| _____ ) | |

      This matter is before the court upon the defendant's sealed *pro se* motion for compassionate release (ECF No. 325) pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A). The defendant does not raise any medical concerns as the basis for his request for release. Rather, the defendant contends that his sentence is excessive due to his "stacked" § 924(c) gun charges present an extraordinary and compelling reason for this court to reduce his sentence. He argues that were he to be sentenced today under the First Step Act, his sentence would be only 14 years not the 41 year sentence he received from this court in 2007.

      The government has responded in opposition. The defendant did not reply thereto. The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the defendant. For the reasons which follow, the defendant's motion is granted in part and denied in part.

### I. STANDARD OF REVIEW

      Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir.

1

2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin,* 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), provides:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

>such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>(i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

Before the passage of the First Step Act, the United States Sentencing Commission permitted a sentence to be modified due to the defendant's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. *See* U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reasons" other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. at n. 1 (D).

3

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is as of now no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also*, *Kibble*, 992 F.3d at 331.

Nevertheless, § 1B1.13 provides a framework when evaluating a defendant's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A).

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

In his motion before this court, the defendant attests that he submitted a request to the Warden on August 26, 2020, and that his request was denied by the Warden on September 10, 2020.  He also attests that he filed an appeal of that administrative remedy procedure.  The government does not dispute that the defendant has satisfied the procedural requirements of § 3582(c)(1)(A).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.  Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief.  *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release.  However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release.  If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard.  Under these circumstances, a chronic condition for which the defendant is not expected to recover reasonably may be found to be serious and substantially diminish the ability of the defendant to provide self-care within the correctional institution, even if that condition would

5

not have constituted an extraordinary and compelling reason absent the risk of COVID-19.[1] As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

As noted previously, the defendant does not raise any medical issues as the basis for his motion for compassionate release. Therefore, the court will not address further any of the information provided by the government relating to the defendant's BOP medical records.

## II.  BACKGROUND & DISCUSSION

In January, 2006, the defendant robbed the State Credit Union in Greenwood, South Carolina while possessing a firearm and instructing the bank teller to put all her money in a bag. The defendant also told the teller to take him to the vault, but while en route to the vault, the teller was able to escape and contact law enforcement. The defendant was arrested shortly thereafter and, upon questioning by law enforcement, admitted to committing 15 other bank robberies. Each of these bank robberies involved the use of a firearm. The total loss to all of the banks was more than $188,000.

In April 2006, the defendant was charged in a 30-count Superseding Indictment (ECF No. 31). Fifteen counts alleged armed bank robbery and the other 15 counts charged

---

[1] The government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19. In late December 2020, BOP facilities began receiving initial allotments of COVID-19 vaccines. According to the BOP, as of June 7, 2021, it has distributed more than 190,470 vaccines and administered more than 188,661,000 of them.

using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

In December 2006, the defendant pleaded guilty, pursuant to a written plea agreement (ECF No. 55) to Counts 1, 2, 7, 8, 25, 27, and 29, described briefly as follows:

| | |
|---|---|
| Counts 1 & 2: | On or about January 13, 2006, armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); |
| Counts 7 & 8: | On or about July 5, 2002 armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); |
| Counts 25, 27, and 29: | May 20, 2005, October 6, 2005, and November 17, 2005 armed bank robberies, in violation of 18 U.S.C. §§ 2113(a), 2113(d). |

The Presentence Report (PSR) (ECF No. 58) prepared by the U.S. Probation Office calculated the defendant's criminal history category as I. His total offense level on the armed bank robberies was 29. This yielded a Guideline sentence range of 87 to 108 months on the bank robberies. In addition, the defendant faced a minimum 7 years consecutive on the Count 2 firearm offense and a minimum of 25 years consecutive on the Count 8 firearm offense.

In April 2006, based upon applicable U.S. Sentencing Guidelines and existing case law, this court sentenced the defendant to 492 months of incarceration. This sentence consisted of 108 months as to the 5 armed robberies; 84 months consecutive on the first § 924(c) firearm charge in Count 2; and an additional 300 months consecutive on the second § 924(c) firearm charge in Count 8. It can thus be seen that the two § 924(c) counts that were "stacked" added a total of 32 additional years (or 384 months) on top of the underlying bank robbery sentence called for by the 2005 Guidelines manual.

In § 403 of the First Step Act of 2018, Congress amended 18 U.S.C. § 924(c) to provide that the 25-year (300 months) consecutive term for successive § 924(c) offenses does not apply unless a defendant had a previous, final conviction for a § 924(c) charge at the time of the offense. This effectively did away with the so-called "stacking" procedure that had been followed by the district courts across the country for many years. However, the First Step Act expressly provided that this change in the law was *not* retroactive.

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) however, the Fourth Circuit Court of Appeals indicated that the former practice of stacking § 924(c) convictions could be considered in a fresh look at sentencing under motions brought pursuant to § 3582(c)(1)(A) of the First Step Act. Although the facts and circumstances of the case are somewhat different, and the defendant's conduct here is more culpable than that of the *McCoy* defendants, it cannot be denied that the central holding of *McCoy* applies to this case.

Although the central holding of *McCoy* applies to the defendant's case, some of the important factors are quite different. In *McCoy*, the defendants were relatively young at the time of the commission of their crimes—from 19 to 24 years old. They all had "excellent" institutional records and had taken substantial steps toward rehabilitation. *McCoy*, 981 F.3d at 286.

By contrast, Mr. Dyches was 31 and 34 years of age at the time he committed the two § 924(c) crimes during the admitted bank robberies to which he pleaded guilty. And, as noted above, his institutional disciplinary record is quite different from those in *McCoy*.

In its brief, the government notes that *McCoy* also held that in considering whether extraordinary and compelling reasons exist for a sentence reduction, district courts are permitted to consider the "unusual length" of a sentence as well as the "'gross disparity' between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." 981 F.3d at 285. It thus concluded Congress' recent amendments to the stacking provisions of § 924(c) could, when coupled with other defendant-specific factors, constitute extraordinary and compelling reasons under § 3582(c)(1)(A)(i). *Id*.

However, the government also posits that *McCoy* did not hold that the existence of stacked § 924(c) sentences alone necessarily satisfies the requirements of § 3582(c)(1)(A)(i) in all cases. Instead, it held courts "may consider" that "defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *Id*. *McCoy* stressed the

9

"extraordinary and compelling" prong of § 3582(c)(1)(A)(i) is a "heightened standard," and only those defendants who can meet that standard may obtain relief. 981 F.3d at 287. As the court explained, "it was not unreasonable for Congress to decide that it did not want sentence reductions based on § 403 of the First Step Act to be as widely available as relief under § 404 – and thus to limit those reductions to truly extraordinary and compelling cases." Id. (emphasis added).

Finally, the government suggests that in its broadest terms, *McCoy* thus holds that although § 1B1.13 is not the applicable policy statement for compassionate release motions brought by inmates, defendants still must meet the "heightened standard" required by § 3582(c)(1)(A)(i). Both before and after *McCoy*, defendants must clear the "extraordinary and compelling" threshold by presenting circumstances "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (11th ed. 2019), that "go[] beyond what is usual, regular, or customary," or that are "exceptional to a very marked extent." "Extraordinary."[2] If the mere presence of previously mandated stacked § 924(c) sentences was sufficient to constitute an extraordinary and compelling reason, § 3582(c)(1)(A)(i)'s use of the phrase "extraordinary and compelling" would be rendered meaningless.

---

[2] Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/extraordinary. Accessed 3 Dec. 2020.

Based upon the totality of the record in this case, the court concludes that a reduction in sentence is appropriate in this case because the defendant has shown an extraordinary and compelling reason for such a reduction. However, the court is not persuaded that the defendant's sentence should be reduced to a sentence of time served as suggested by the defendant in this motion.

This court is of a firm opinion that a sentence of time served is not appropriate. The defendant robbed five banks, armed with a weapon. Ten more bank robbery charges and 13 more § 924(c) firearms charges were dropped/dismissed under the plea agreement with the government. It cannot seriously be disputed that the prosecution dropped the remaining counts because it was fully aware of the then-existing regime of stacking § 924(c) counts for sentencing purposes and was thus satisfied that the defendant would serve a substantial sentence for his crimes. Additionally, this court has given the defendant the benefit of the doubt on whether he should be held accountable for brandishing the firearms, rather than possessing them. This determination, alone, made a difference of four years (7 years consecutive vs. 5 years for both counts 2 and 8) in the defendant's favor.

This court has determined that a reduction of the defendant's sentence to a total incarceration term of 228 months is appropriate. This new term consists of 108 months on the bank robberies (Counts 1, 7, 25, 27 and 29) and 60 months on each of the two § 924(c) firearm charges (Counts 2 and 8), to run consecutive to the sentence imposed on the bank robbery counts. This will result in a total custodial sentence of 228 months or 19 years. This

sentence will allow the defendant to be released from incarceration when he is in his mid-50s, and at an age where he is unlikely to recidivate and thus would not be a danger to the community. The court has determined that a sentence of this amount is sufficient, but not greater than necessary to serve the statutory purposes of sentencing.

If the defendant were sentenced today, the mandatory minimum consecutive sentence for each § 924(c) count would be 5 years if the firearm was merely used or possessed, and 7 years if it was actually brandished. Possession of a firearm during and in relation to a crime of violence would result in a 5-year consecutive sentence, whereas brandishing the firearm would result in a 7-year consecutive sentence. Thus, if the defendant were sentenced today, the additional penalty on top of the bank robbery charge Guideline would have been 10 to 14 years.

The intervening years since the defendant was sentenced have, however, added another complicating factor. When the defendant was sentenced in 2007, the responsibility of determining a firearm was brandished or merely possessed rested with the sentencing judge. Indeed, the PSR indicated that the defendant brandished the firearm on each occasion and this court made a finding on brandishing at sentencing. Intervening court decisions have indicated, however, that this factor must be proved beyond a reasonable doubt in a jury trial. Because the defendant actually used the firearms in the two armed bank robberies he committed, there can be little doubt that the defendant brandished the firearm, but on the record before it, this court must give the defendant the benefit of the doubt and assume that

the firearm was merely possessed and not brandished.

Based on all the foregoing, this court concludes that the defendant has demonstrated an extraordinary and compelling reason for compassionate release. This finding does not, however, end the court's inquiry. This court must still determine whether the § 3553(a) factors suggest that the defendant's sentence should not be reduced. *See United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). Addressing the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of Offense*. As indicated above, the defendant pleaded guilty to five separate bank robberies on five separate occasions. He also pleaded guilty to using or carrying a firearm in relation to two of those bank robberies. The defendant actually robbed 15 banks in all, but was allowed to plead down to only five bank robberies as a concession by the government. It is entirely likely that the government's agreement to drop 10 of the 15 bank robberies (and the related § 924(c) charges) was occasioned, in large part, by the extremely large consecutive sentence called for by § 924(c) at the time. In any event, putting aside the ten bank robberies for which the charges were dismissed, the fact remains that the defendant committed a most serious series of crimes and that firearms were associated with two of those crimes.

2. *History and Characteristics of the Defendant*. The defendant is just now more than 50 years old. He began serving his sentence on January 13, 2006 and has thus served just over 15 and one-half years. He is scheduled to be released from the BOP in January

2041. At sentencing, his criminal history category was I.

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011). On a motion to reduce sentence under the First Step Act, a district court must consider the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402 (4th Cir. Jan. 22, 2021).

While incarcerated, the defendant has received a total of 6 disciplinary sanctions. In 2009, he was sanctioned for phone abuse—disrupt monitoring; in 2010 he was disciplined for possessing an unauthorized item; in 2012 he was disciplined for interfering with taking count; in 2013 he was disciplined for possessing and unauthorized item; and in 2017 he was disciplined for fighting with another person.[3]

Also while incarcerated, the defendant has accumulated a total of 8 education credits. He has taken classes in job readiness, money management, electricity for HVAC, real estate, Spanish, and personal power. Commendably, the defendant has earned his GED while at the BOP. Balanced against his disciplinary records recited above, the defendant's post-sentencing conduct in prison has not been perfect, but no violations have occurred within the past four years.

In his motion, the defendant suggests that he still has ties to his former job and that his twin brother wants him to partake in his real estate business. The defendant refers to his

---

[3] In a supplement to his motion (ECF No. 324) the defendant sets out further explanation for his disciplinary violations.

copyrighted material as a potential source of lucrative gain. He plans to live with his wife and 18-year-old daughter in South Carolina. His wife is employed and has good health insurance. He has two other grown children.

Addressing the remaining § 3553(a) factors, the court finds as follows:

(2) *Seriousness of the Crimes*. As noted, this court regards the defendant's crimes as very serious, fully supportive of a significant sentence.

(3) *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment

(4) *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

(5) *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

(6) *Need to Avoid Unwarranted Sentencing Disparities* The defendant had no other co-defendants in his criminal case.

III. CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A).[4]

The defendant's motion is granted in part and denied in part (ECF No. 325). As a result, his sentence is reduced as follows: 108 months incarceration as to Counts 1, 7, 25, 27, and 29, all to run concurrently. As to Counts 2, and 8, the sentence is 60 months incarceration on each count, both to run consecutive to the term imposed on Counts 1, 7, 25, 27, and 29. This results in a new sentence totaling 228 months incarceration. The defendant's term of supervised release shall remain at 5 years. All of the other terms and conditions of the original sentence remain in full force and effect.

IT IS SO ORDERED.

August 6, 2021  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")